UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RONALD STODGHILL,           )
                            )
          Plaintiff,        )
                            )
     vs.                    )     No. 4:05-CV-1417 CEJ
                            )
WELLSTON SCHOOL DISTRICT,   )
et al.,                     )
                            )
          Defendants.       )


**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants Wellston School District, Charles Brown, Garry Beals, and Cassandra Hollins-Wallace[1] to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. See Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The plaintiff has responded, and the issues are fully briefed.

**Background**

From 1984 to June of 2005, plaintiff Ronald Stodghill was the superintendent of the Wellston, Missouri school district. On May 30, 2001, plaintiff entered into an employment contract with the school district. The contract (a copy of which is attached to the complaint) contained the following provision:

**The term of this agreement shall be from June 1, 2001 through May 31, 2003, unless terminated sooner in**

---

[1] Defendants Dorothy Moore, Dwight Whitfield, Linda Whitfield, Deserata Hughes and Donald Gardner, who are the members of the former Board of Directors of the Wellston School District, have answered plaintiff's complaint and do not join in this motion to dismiss.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**accordance with the terms of the contract, applicable law, Board regulations and policies.**

In 2002, the district's board of education extended plaintiff's contract for one year, and did so again in 2003. The board extended the plaintiff's contract a third time in July 2004, bringing the end date of his contract to May 31, 2006.[2]

During the 2003 and 2004 school years, the Wellston school district failed to meet the requirements for accreditation. Missouri law provides that "[w]henever any school district in this state . . . is classified unaccredited for two successive school years by the state board of education, its corporate organization shall lapse." Mo. Rev. Stat. § 162.081.1. In June of 2005, the state board of education held a hearing and, upon determining that the district had been unaccredited for two successive years, declared that the Wellston school district had "lapsed."

On June 30, 2005, the state board of education appointed a three-member Special Administrative Board to administer the district, pursuant to Mo. Rev. Stat. § 162.081.4. The statute provides:

> Upon lapse of the district, the state board of education may:
> (1) Appoint a special administrative board, if such a board has not already been appointed, and authorize the special administrative board to retain the authority

---

[2] Plaintiff's alleges in his complaint that his initial contract was for a term of three years. However, the contract, attached as Exhibit 1 to plaintiff's complaint, shows that the "term of this agreement shall be from June 1, 2001 through May 31, 2003," which is only a two year term. Taking into account the extensions, the plaintiff's contract was to end on May 31, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

granted to a board of education for the operation of all
or part of the district[.]

Section 162.081.7 provides that "[n]either the special administrative board . . . or any other entity assigned territory, assets or funds from a lapsed district shall be considered a successor entity for the purpose of employment contracts, unemployment compensation payment . . . or any other purpose." Section 162.081.3 provides that one member of the Special Administrative Board must be a professional administrator, who is to be compensated and will also serve as chair of the board; the other two members, who must be residents of the district, are not compensated.

On June 29, 2005, defendant Charles Brown was appointed to the Special Administrative Board (SAB)for the Wellston school district and is currently the superintendent or chief executive officer of the district. Defendants Garry Beals and Cassandra Hollins-Wallace were also appointed on that same date as members of the SAB. Plaintiff alleges that on June 25, 2005, the district stopped paying his salary, and on June 30, he was instructed by Brown to vacate his office. He also alleges that he was never informed as to the status of his employment with the district, but he concluded that he had been terminated. Plaintiff further alleges that he has not been compensated for the sick leave and vacation days he accrued during his tenure at the school district, and that the district has not made contributions to his tax-sheltered annuity as required by the employment contract.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendants counter that the plaintiff's employment contract terminated by operation of law, and not by their actions. They point to § 162.081.7, which states that "[n]either the special administrative board nor any district or other entity assigned territory, assets or funds from a lapsed district shall be considered a successor entity for the purpose of employment contracts, unemployment compensation . . . or any other purpose." Mo. Rev. Stat. § 162.081.7. Thus, defendants argue, upon lapse of the district and the appointment of the SAB, plaintiff's contract with the district simply became ineffective. Plaintiff claims that the actions of the district and the SAB, whether pursuant to the statute or not, violated his rights. He challenges the actions of the defendants and the operation of the statute as violating the Contract Clauses of the United States and Missouri constitutions and his right to due process under federal and state law. Plaintiff further asserts that § 162.081.7 is preempted by the Bankruptcy Code, has effected a taking of his property without due compensation, and violates substantive due process. In the complaint, plaintiff requests a name clearing hearing to vindicate his liberty interest, and asserts a common law breach of contract claim.

## Standard for Dismissal Under Fed. R. Civ. P. 12(b)(1) or 12(b)(6)

Defendants claim that they are immune under the Eleventh Amendment, and move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Additionally, defendants argue that plaintiff has failed

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to state a claim upon which relief can be granted, and thus his complaint should be dismissed under Rule 12(b)(6).

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. A complaint is not to be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The issue is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. Thus,

> [i]f as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

Neitzke v. Williams, 490 U.S. 319, 327 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

"Ordinarily, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion. However, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). See also Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003)("In a case involving a contract, the court may examine the contract documents in

deciding a motion to dismiss" without converting the motion to one for summary judgment).

To prevail in a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the defendant must successfully challenge the complaint on its face or the "factual trustfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)(citation omitted)).  When considering a motion under Rule 12(b)(1), a court must distinguish between a "facial attack" or a "factual attack." Osborn, 918 F.2d at 729 n.6.  When, as here, the moving party initiates a "facial attack" on subject matter jurisdiction, the court may look only to the face of the pleadings to determine whether subject matter jurisdiction exists, and the nonmoving party is entitled to the same protections it would receive in the context of a Rule 12(b)(6) motion.  Id. (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).[3]

**Eleventh Amendment Immunity**

Defendants first argue that the school district and the special administrative board members, who are sued in their official capacities, are immune from suit under the Eleventh

---

[3]Thus, in a Rule 12(b)(1) motion (as in a Rule 12(b)(6) motion), all the factual allegations concerning jurisdiction are presumed to be true and the motion will be successful only if the nonmoving party fails to allege a necessary element for subject matter jurisdiction.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Amendment. Under Eleventh Amendment jurisprudence, states, their agencies, and departments are immune from suits by their own citizens or citizens of other states. U.S. Const. amend. XI. However, political subdivisions and municipal corporations do not generally enjoy the same immunity from suit. Sherman v. Curators of the University of Missouri, 16 F.3d 860, 862 (8th Cir. 1994).

"The ability of a defendant to partake of the state's eleventh amendment immunity depends, at least in part, on the nature of the entity created by state law." Miener v. State of Missouri, 673 F.2d 969, 980 (8th Cir. 1982), citing Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 280 (1977). In construing the potential immunity of a Missouri school district, the Eighth Circuit stated that "[c]ontrolling case law holds that a county, as well as the school board of such a political subdivision, does not occupy the same position as a state for eleventh amendment purposes," and held that a school district was not immune under the Eleventh Amendment. Miener, 673 F.2d at 980. See also E.E.O.C. v. Hickman Mills Consol. School Dist. No. 1, 99 F. Supp. 2d 1070, 1080 (W.D. Mo. 2000) (neither school districts nor school boards are entitled to Eleventh Amendment immunity).

If the only question presented was whether an *elected* board of education of a school district, or a district itself, enjoyed the state's Eleventh Amendment immunity, the answer would be clear and in the negative. However, the defendants argue that because the state "took over" the Wellston district, the district and its

*appointed* board should properly be considered a state department or agency. The Wellston school district is the first district to which the provisions of § 162.081 have been applied. Consequently, the parties have not pointed to any definitive authority on whether Eleventh Amendment immunity exists in these circumstances.

However, some guidance may be found in two decisions of the Supreme Court. In <u>Mount Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274 (1977), the issue before the Court was whether a local board of education in Ohio "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." <u>Id</u>. at 280. The Court noted that, under Ohio law, "political subdivisions" included school districts. The Court considered that the school district received "significant" financial support from the state and was subject to "some guidance" from the state board of education. <u>Id</u>. Further consideration was given to the fact that Ohio law give school boards "extensive powers" to issue bonds and to levy taxes. <u>Id</u>. Based on the record before it, the Court concluded that the school board was more like a county or city than an arm of the state, and was therefore not entitled to Eleventh Amendment immunity. <u>Id</u>. at 280-81.

Earlier, in <u>Edelman v. Jordan</u> 415 U.S. 651 (1974), the Supreme Court looked to the source from which payment of a judgment would be made in deciding whether the defendant state officials were

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

entitled to Eleventh Amendment immunity. The Court concluded that they were. In reaching its decision, the Court wrote:

> The funds to satisfy the award in this case must inevitably come from the general revenues of the State of Illinois, and thus the award resembles far more closely the monetary award against the State itself, Ford Motor Co. v. Department of Treasury, [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)] *supra*, than it does the prospective injunctive relief awarded in Ex parte Young [, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)].

Id. at 651.

See also, <u>Miener v. State of Mo.</u>, 673 F.2d 969, 980 (8th Cir. 1982) ("In determining whether a state agency or department shares the state's eleventh amendment shield, the key is who will pay for any judgment rendered in favor of [plaintiff].")

The defendants are correct in their assertion that the SAB differs from a regular board of education: the SAB members were appointed, not elected as are regular school board members. However, this appears to be the only difference, and the Court finds that it is not so significant as to warrant giving the SAB protection under the Eleventh Amendment that a regular school board would not be entitled to receive.

In arguing that the state's Eleventh Amendment immunity should apply to them, the defendants point to the control exercised by the state over the lapsed district. After a district lapses, the state board of education can appoint a special administrative board, which "shall consist of two persons who are residents of the school district . . . and a professional administrator, who shall chair the board . . . ." Mo. Rev. Stat. § 162.081.3. Apart from the

appointment of the special administrative board, the extent of the state board's control over the lapsed district is not apparent from the language of the statute.

Upon appointment by the state board of education, the special administrative board may "*retain the authority granted to a board of education* for the operation of the lapsed school district under the laws of the state in effect at the time of the lapse." Mo. Rev. Stat. § 162.081.4 (emphasis added). The statute does not identify a source of authority for the special administrative board; rather, after the board is appointed, the authority to act flows from the pre-existing authority given to district boards generally. Additionally, the language of the statute suggests that powers of a special administrative board are to be the same as those of any other board of education, and would include the control and management of district assets.[4] Nothing in the statute suggests the lapse of a district results in the transfer of district assets to the state, or that the manner in which a special administrative board generates revenue for a lapsed district differs from that of a regular board. Also, the fact that the professional administrator is to paid "in whole or in part with funds from the district," is further indication of the district's continuing financial autonomy. Mo. Rev. Stat. § 162.081.3.

---

[4]Under Missouri law, public school districts are divided into three classes. Mo. Rev. Stat. § 160.021. The powers of the boards of each class of district are set forth in the statutes. Mo. Rev. Stat. § 162.461 (urban districts), § 162.621 (metropolitan districts), § 162.211, *et seq*. (seven-director districts).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Missouri statute indicates that the special administrative board is to stand in the shoes of the previous board of education. The Court finds that the defendants have not sufficiently demonstrated that the SAB should be treated differently than a regular board of education for Eleventh Amendment purposes. Thus, the Court concludes that the defendants are not entitled to the Eleventh Amendment immunity accorded to the state.

### Plaintiff's Contract with the Wellston School District

Defendants assert that the plaintiff's contract with the Wellston school district is invalid because, under Missouri law, the district itself lacks the power to form contracts with superintendents. In support of this argument, defendants point to section 168.201 of the Missouri Revised Statutes, which states that "the *board of education* . . . may employ and contract with a superintendent. . . ." Mo. Rev. Stat. § 168.201 (emphasis added). Defendants also rely on Mo. Rev. Stat. § 432.070, which prohibits a school district from making contracts beyond the scope of its powers.

As a municipal corporation, a school district cannot act except through its board of directors -- specifically, the district's board of education. Although the contract in this case purports to be an agreement between the Wellston School District and the plaintiff, the signature line shows that the contract was to be executed by the president of the school board.[5] The contract

---

[5] The contract attached to plaintiff's complaint does not bear a signature by either party. For the purposes of this motion, and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

was in writing, as required by Mo. Rev. Stat. § 432.070, and legislative action was taken by the district's board of education to approve and extend the contract. The board clearly acted to establish a written contract with the plaintiff; that the contract erroneously names one party as the school district instead of the board is immaterial when the signing entity demonstrates the intent of the board. Plaintiff has alleged the existence of a contract sufficient to survive a motion to dismiss under Rule 12(b)(6).

### Contract Clause Claims

Plaintiff seeks declaratory relief and damages under 42 U.S.C. § 1983 for defendants' alleged violation of the Contract Clause of the United States Constitution and the comparable provision in the Missouri constitution. Article I, Sec. 10, Clause 1 of the United States Constitution states that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." Missouri's constitution contains a similar provision: "no . . . law impairing the obligation of contracts . . . can be enacted." Mo. Ann. Stat. Const. Art. 1, §13. Plaintiff alleges in the complaint that he entered into a contract with the Wellston School District on May 31, 2001. On three successive occasions, the board of education voted to extend that contract by a year, so that plaintiff's contract was to run through May of 2006. Plaintiff argues that § 162.081.7 has impaired his contract, in violation of the United

because the defendants have not challenged the fact that the contract was executed by the parties, the Court will accept that the document appended to the complaint represents the employment contract that was executed.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

States and Missouri constitutions, by relieving the SAB of the obligation to honor his employment contract.

"The modern Contract Clause analysis involves three components: '(1) Does a contractual relationship exist, (2) does the change in law impair that contractual relationship, and if so, (3) is the impairment substantial?'" <u>Koster v. City of Davenport, Iowa</u>, 183 F.3d 762, 766 (8th Cir. 1999). Plaintiff states that he and the elected school board of the district had a contractual relationship, which satisfies the first component.[6] As for the second component, the authority of the state board of education to appoint a special administrative board in a lapsed district was created by a 1998 amendment to § 162.081, which predates the employment contract at issue in this case that was signed in 2001. The Contract Clause is only a bar to the impairment of pre-existing contracts. <u>See</u> <u>Oshkosh Waterworks Co. v. City of Oshkosh</u>, 187 U.S. 437, 446 (1903) ("The contract clause of the Constitution of the United States has reference only to a statute of a state enacted after the making of the contract whose obligation is alleged to have been impaired."); <u>State v. Lauridsen</u>, 312 S.W.2d 140, 143 (Mo. 1958) (the Contract Clauses of the United States and Missouri constitutions do not apply to a law enacted prior to the formation of the contract). Thus, the 1998 amendment to § 162.081 cannot be

---

[6] As discussed above, plaintiff's contract states that it was between Ronald Stodghill and the Wellston School District. However, because the board of education was the authorized contracting entity, the Court will construe the contract to be between plaintiff and the board of education.

said to have impaired a later contract between plaintiff and the board.

In response, plaintiff states that he had been employed by the Wellston school district for more than twenty years, and thus had a long-standing contractual relationship with the district that preceded the statutory amendment. The plaintiff states that he has pleaded "a contract continually in existence with the District since 1984." Pl.'s Surreply at 7. Although the complaint states that "[p]laintiff has been the superintendent of the Wellston School District since 1984," plaintiff admits that during this time "he has served under successive three-year contracts." Compl. at ¶ 9. The Missouri legislature's intent is clear in setting the maximum contract term between a board of education and a superintendent at three years. Mo. Rev. Stat. § 168.201. The limitation on the school board's power to enter contracts with superintendents demonstrates a clear legislative intent contrary to plaintiff's assertion that a continuous contractual relationship was in existence. The contract at issue was signed in 2001, and could not have been affected by a 1998 statutory amendment. Thus, plaintiff's claim that the law impaired the remaining term of his contract must fail.

Plaintiff also alleges in the complaint that he "earned salary and accrued compensable sick leave and vacation time under the terms of his contract with the District . . . for which Plaintiff has not been compensated by the District since its 'lapse.'" Compl.

- 14 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

at ¶ 36.[7] In addition to the uncompensated time from his most recent contract, plaintiff argues that he "accrued sick days and vacation days to which he had a right to compensation from 1984 through 2005, and therefore, has a right to payment for services rendered that predated the 1998 amendments to § 162.081 R.S. Mo." Pl.'s Surreply at 7. Plaintiff argues that <u>Fisk v. Police Jury of Jefferson</u>, 116 U.S. 131 (1885), clearly establishes a public official's right to payment for services already rendered.

In <u>Fisk</u>, plaintiff was a Jefferson Parish district attorney who had not been paid for work done in the years 1871 through 1874. He sued in state court and received judgments for salary owed during those years, but was unable to collect the judgments from the parish authorities. The state supreme court ruled against plaintiff because an 1880 state constitutional amendment prohibited the collection of additional taxes, without which the parish did not have funds to satisfy the judgments. The United States Supreme Court reversed, holding that "after the services have been rendered, under a law, resolution, or ordinance which fixes the

---

[7] Plaintiff's contract states:

Stodghill shall be entitled to thirty (30) working days vacation in each year of this contract. These days need not be taken in one year and may be accumulated. Further, these days, if unused by Stodghill may at any time and at his election be paid to him in cash. . . . Stodghill has twelve (12) annual sick days. Such sick days shall accumulate from year to year and at the end of Stodghill's employment, he shall have the right to be paid for all accumulated days in excess of twelve (12) at his then current rate of pay.

Compl. Ex. 1 at ¶ 7.

rate of compensation, there arises an implied contract to pay for those services at that rate." Fisk, 116 U.S. at 134.

The situation in Fisk, however, is distinguishable from plaintiff's suit on the contract which commenced in 2001. In Fisk, the plaintiff sought compensation for services rendered prior to the change in the law that prevented his recovery. Again, in the situation here, the fact that plaintiff's contract with the district was formed after the 1998 amendment to the law is fatal to his Contract Clause claim.[8] See also Ex parte Goodin, 67 Mo. 637 (1878)("The State . . . entered into a contract with petitioner, which was supported by valuable consideration, to-wit: the service to be rendered, and which, when rendered, constituted a complete and executed contract, which the State, by *subsequent legislation*, was powerless to annul or abrogate.") (emphasis added).

Plaintiff's complaint does not state a cause of action under the Contract Clause of either the United States or Missouri constitutions because it specifies only the most recent contract, signed in 2001, as a basis for plaintiff's claims. The entire contract, including those elements promising compensation for accrued sick and vacation time, was formed after the change in the law, and does not present a Contract Clause issue.

**Procedural Due Process Claim**

---

[8] Plaintiff argues in his surreply that he is entitled to compensation dating back to 1984, but his complaint only specifies the 2001 contract as a basis for suit. Thus, the Court does not address what may be colorable claims for sick and vacation time that had been accrued prior to the change in the law.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Constitution of the United States prohibits deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Plaintiff contends his contract with the district created a property interest, and that the defendants deprived him of this interest without due process. Before a court can address the process which is due, it must first determine whether a property interest existed. In the public employment context, a property interest is recognized when an individual has a reasonable expectation of continued employment grounded in state statutory or contractual law. See Howard v. Columbia Public School Dist., 363 F.3d 797 (8th Cir. 2004).

Often, a statute will dictate whether a public employee has a property interest in employment, and will state whether and under which circumstances an employee may be terminated. For example, a property interest may be found when a statute provides that public employees will only be terminated "for cause." See, e.g., Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985). Although Mo. Rev. Stat. § 168.221 grants tenure to teachers after a probationary period and specifies a limited number of causes for their termination, no such provision applies to school superintendents in Missouri. Kish v. Chilhowee R-IV Sch. Dist., 814 S.W.2d 649 (Mo. Ct. App. 1991). However, property rights may also be created by contract. "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

entitlement must be decided by reference to state law." <u>Bishop v.</u> <u>Wood</u>, 426 U.S. 341, 344 (1976).

In <u>Holloway v. Reeves</u>, 277 F.3d 1035 (8th Cir. 2002), defendants were members of an Arkansas school board who voted to terminate the superintendent of their district with two years remaining on his contract. The court found that the plaintiff had a reasonable expectation of continued employment through the end of his contract, but because the board compensated him fully by "buying out" his contract, plaintiff was not deprived of any property. Although Arkansas law pertaining to superintendents, like Missouri law, does not provide for tenure rights, a property right was established by contract. "[P]ublic employees are entitled to procedural due process . . . when the employee's entitlement to the job is sufficiently certain so as to amount to a constitutionally protected property interest." <u>Id.</u> at 1038.

Plaintiff's contract states that "the term of this agreement shall be from June 1, 2001 through May 31, 2003, unless terminated sooner in accordance with the terms of the contract, applicable law, Board regulations and policies." Compl. Ex. 1, at ¶ 3. Limited by the three-year term allowed to superintendents under Missouri law, the contract quite clearly does not grant tenure to plaintiff. Significantly, it also contemplates the possible termination of the contract prior to the end of its term, but does not specify that termination happen only "for cause." Although the contract allows plaintiff's termination "in accordance with the terms of the contract," there are no other references to

- 18 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

termination procedures within the contract itself. It does not appear, nor does plaintiff argue, that the board was subject to any constraints if and when it chose to terminate plaintiff's contract. On its face, it is doubtful that plaintiff's contract created an "entitlement to the job . . . sufficiently certain so as to amount to a constitutionally protected property interest." _Holloway_, 227 F.3d at 1038.[9]

Whether or not plaintiff's contract, standing alone, created a legitimate expectation of continued employment, the real question is whether that expectation could have survived the lapse of the district. After the statute was amended to mandate a district's lapse for lack of accreditation, there existed in every non-permanent contractual relationship with a school district the possibility that one of the contracting parties (the district) could cease to exist following a determination of lapse by the state board of education. And while the plaintiff may have legitimately expected his employment to continue (according to the terms of his contract) while the elected school board remained in office, it is hard to see how that expectation would have survived the organizational lapse of the district and the replacement of the school board. To the extent that plaintiff's contract did create

---

[9] It is not correct, as plaintiff argues, that "a school superintendent under contract has a constitutionally protected property interest in his continued employment." Pltf.'s Mem. in Opp. at 9. In _Holloway_, the court found that the plaintiff's contract was strong evidence of an expectation of continued employment, but did not state why. The terms of the contract, not the mere existence of one, are the source of the expectations of continued employment.

a property interest in continued employment, that interest could not have survived the dissolution of the entity with whom he contracted.

Plaintiff alleges that other employees of the lapsed district were retained after the special administrative board took control. He alleges that the SAB has taken the position that "the district is not required to honor any contracts previously entered into by it, except those contracts it chooses to honor." Compl. at ¶ 33. He states that "other employees of the District, who earned salary and/or accrued compensable sick leave and/or vacation time under contracts prior to the District's 'lapse,' have been paid by the District since its 'lapse.'" Compl. at ¶ 37. The practices of an employer with regard to other employees may give rise to an expectation of continued employment, but that could not have been the case here.

Plaintiff's efforts to compare himself to other employees may not be appropriate in this circumstance. Section 162.081. 3 specifically provides for the appointment of a professional administrator who is in essence the superintendent of the lapsed district. No mention is made in the statute about replacing other employees. Plaintiff's position was supplanted by a specific statutory provision. When Wellston lapsed, the state board could have appointed plaintiff to serve as the professional administrator for the district, but it chose not to.

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit

understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." _Perry v. Sindermann_, 408 U.S. 593, 601 (1972). "A property interest also may be manifested by an employer's historical practices and conduct which rise to the level of a 'common law' of the employment relationship that both parties recognize as establishing their respective rights and responsibilities." _Hughes v. Whitmer_, 714 F.2d 1407, 1414 (8th Cir. 1983) _citing_ _Perry_, 408 U.S. at 602. "An employee's unilateral expectations spawned by the regularized practices of his employer will not do." _Hughes_, 714 F.2d at 1414, _citing_ _Board of Regents v. Roth_, 408 U.S. 564, 577 (1972).

Plaintiff suggests that the actions of the SAB, in retaining or renewing the contracts of other employees of the lapsed district, evince a policy respecting the contractual rights of these employees. The defendants vigorously contest the idea that any defendant acted to terminate the plaintiff and argue that plaintiff was terminated by the operation of state law, but the policy of the SAB in this regard is unclear. Although Missouri law states that the post-lapse district is not a successor entity for purposes of employment contracts, the SAB appears to have either retained employees or compensated them for accrued sick and vacation time under the same contracts established with the lapsed district. However, even taking the facts as alleged by plaintiff as true, as the Court is required to do here, any expectation of continued employment created by the retention of other district

employees would have arisen after the plaintiff was asked to vacate his office and was effectively terminated.

The Missouri state board of education declared the Wellston school district lapsed on June 23, 2005, and appointed the SAB board on June 29, 2005. The plaintiff was asked to vacate his office on June 30, 2005. The only facts tending to support plaintiff's expectation of continued employment are those which show that the SAB honored the employment contracts of other district employees despite the lack of any obligation to do so. The board did not create a pattern of "common law" in accepting these contracts sufficient to give rise to plaintiff's expectation of continued employment, because plaintiff was effectively terminated the day after the appointment of the SAB. In other words, any actions attributable to the SAB could not have created any legitimate expectation about the plaintiff's employment.

Furthermore, the Court notes that the circumstances by which plaintiff was terminated or constructively terminated from his position as superintendent tend to support the conclusion that no property interest existed.

> Over a century ago [the Supreme Court] recognized the principle that the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action. . . . That provision has always been understood as referring only to direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals.

<u>O'Bannon v. Town Court Nursing Center</u>, 447 U.S. 773, 789 (1980) (internal citations and quotations omitted). Citing <u>Goldberg v. Kelley</u>, 397 U.S. 254 (1970), Justice Blackmun concurred:

> The Constitution would not have entitled John Kelly to a fair hearing if New York had chosen to disband its public assistance programs rather than to cut off his particular award. . . . When governmental action affects more than a few individuals, concerns beyond economy, efficiency and expedition tip the balance against finding that due process attaches.

<u>O'Bannon</u>, 447 U.S. at 798, 800 (Blackmun, J., concurring).

The deprivation of plaintiff's property interest, if there was one, was incident to the dissolution of the school district and the assumption of control by a state-appointed special administrative board.

**Property Interest in Compensation for Services Rendered**

The plaintiff cannot state a constitutionally protected property interest in his continued employment with the district. However, as with his Contract Clause claim, plaintiff has also asserted a property interest in his accumulated sick and vacation days. He claims the board was also obligated to contribute an amount equal to ten percent of plaintiff's salary to a tax-deferred annuity each year, and they have not done so since his dismissal. Plaintiff argues that he was deprived of these property interests without due process.

A similar issue was presented in a Sixth Circuit case, <u>Ramsey v. Board of Ed. of Whitley County, Ky.</u>, 844 F.2d 1268 (6th Cir. 1988). Plaintiff, a teacher, had accumulated 127 days of sick leave during the course of her employment. When the board of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

education reduced her number of sick days to 29, she sued under 42 U.S.C. § 1983 for deprivation of property without due process. The court of appeals held that although "[plaintiff] could have a constitutionally protected property interest in those days," the case was properly dismissed because "[n]ot every deprivation of liberty or property requires a predeprivation hearing or a federal remedy." Id. at 1272. Based on Supreme Court cases finding no federal cause of action where deprivations could be remedied by state tort actions, the court reasoned that "those cases should also bar a section 1983 action when the deprivation is a simple breach of contract and there is adequate state breach of contract action available as a remedy." Id. at 1273. The court cited the decisions of other circuits, concluding that

> [E]ven when a person's means of livelihood is connected to the deprivation claim, due process does not always require a predeprivation hearing or support a section 1983 action when any interest in employment is affected. . . . [A] nontenured employee's property interest in employment is created and defined by the employee's contract. The employee has a property interest in employment for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action.

Id. at 1273-74.

There is support for this view in the Eighth Circuit. In Lillehaug v. City of Sioux Falls, 788 F.2d 1349 (8th Cir. 1986), plaintiff was a city employee whose salary was raised as the result of a mistaken assumption about the part-time nature of his job. After the mistake was discovered, the city garnished his wages to recoup the erroneous overpayment. Plaintiff sued under 42 U.S.C.

- 24 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

§ 1983, claiming that the garnishment was an unconstitutional deprivation of property without due process. The court disagreed, holding that "[plaintiff] must do more than simply assert a deprivation of a protected property interest by persons acting under color of state law. The claimant also must show that the state procedures available to challenge the deprivation are inadequate and therefore do not meet due process standards." Id. at 1352.

Accordingly, plaintiff here cannot state a claim under 42 U.S.C. § 1983 unless the state procedures for breach of contract are inadequate. He brings a state breach of contract claim in this lawsuit, but it remains to be determined whether § 162.081.7 frustrates all of plaintiff's contract remedies.

Section 162.081 allows the state board of education to declare a district "lapsed." In the event of a lapse, the district loses its corporate organization and the existing board is removed from office and supplanted by a special administrative board. The district's assets may be then be transferred to another entity, either another district or the special administrative board. The breach of contract occurs by virtue of the dissolution of the district's board of education, because without assets or control of the district, the board is unable to pay employees with whom they have contracted. Normally, a remedy would be available to those employees with a breach of contract claim. However, § 162.081.7, which exempts the special administrative board from successor liability, appears to destroy the remedies available for the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

breach because the contracting entity no longer has any assets, and the entity to which the assets are transferred has no liability. In the absence of § 162.081.7, a district that succeeded to all of the assets of the lapsed district would also be responsible for the liabilities.  See, e.g., Division of Employment Security v. Taney County Sch. Dist., 922 S.W.2d 391 (Mo. banc 1996) (finding that a county school district was a successor to a lapsed school district for the purposes of the Employment Security Law); Lewis County Sch. Dist. v. Normile, 431 S.W.2d 118, 121 (Mo. banc 1968) ("when a consolidation of school districts is approved the component districts shall immediately cease to exist and the newly formed district shall be entitled to receive all of the assets of said districts, and shall be liable for all of the debts and legal obligations of said former districts."); State ex rel. Consol. School Dist. No. 8 of Pemiscot County v. Smith, 121 S.W.2d 160, 162 (Mo. 1938) ("[W]here one corporation goes entirely out of existence by being annexed to or merged in another corporation, then the subsisting corporation will be entitled to all the property and will be answerable for all the liabilities.  When the benefits are taken, then the burdens are assumed."); see also Town of Mt. Pleasant v. Beckwith, 100 U.S. 514 (1879).  If the plaintiff could state a claim against the lapsed school district for breach of contract, and the assets of the lapsed school district had been assumed by the special administrative board, it follows under the prior precedents that the new board would have been liable for the "legal obligation" of the plaintiff's contract.

The question as yet unanswered by the Missouri courts is whether § 162.081.7 can be used as a bar not only against the remaining employment terms of contracts formed by lapsed districts, but also as a bar to recovery of payments for services already rendered pursuant to the district's contracts. The defendants take the position that "the special administrative board is not liable for any obligations created by the previous school board." Reply Mem. in Supp. of Mot. to Dismiss, at 13.

No Missouri court has had an opportunity to construe the meaning of § 162.081.7. Defendants urge this Court to abstain from adjudication of these issues under <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496 (1941).[10]

> *Pullman* abstention requires consideration of (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations.

---

[10] Technically, the defendants base their request for abstention on the fact that in a currently pending state court action, the same plaintiff challenges the authority of the state board of education to effect a lapse of the district by removal of previously earned accreditation points. The information before the Court is insufficient to allow a determination of whether that litigation has any bearing on the liabilities of successor districts, and thus plaintiff's due process claim. Thus, federal court abstention based on proceedings already begun in state courts presents a different ground for abstention that cannot not be analyzed here.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

<u>Beavers v. Arkansas State Bd. of Dental Examiners</u>, 151 F.3d 838, 841 (8th Cir. 1998), <u>citing</u> <u>George v. Parratt</u>, 602 F.2d 818, 820-22 (8th Cir. 1979).

Turning to the first *Pullman* factor, the Court notes that the rights plaintiff seeks to vindicate are essentially his contract rights. Plaintiff asserts those rights through the prism of the Contract Clause, the Due Process Clause, and the Takings Clause of the United States Constitution, but the underlying issue is the same: plaintiff claims entitlement to the benefits of the bargain he struck with the Wellston school district. As discussed above, plaintiff has no property interest in the continuation of his employment with the new district because the terms of his contract contemplate termination in accordance with applicable law, which in turn allows for the dissolution of a school district. But he does raise a claim for compensation for work he has already performed. This appears to be a case where the rights at stake are "not only adequately remedied by a state breach of contract action, but far more appropriately remedied by such an action. This is because the state common law of contracts creates the property interest at stake and that same law determines what remedy lies for the deprivation caused by the breach of the contract." <u>Ramsey v. Board of Ed. of Whitley County, Ky.</u>, 844 F.2d 1268, 1273 (6th Cir. 1988). Furthermore, the federal remedy, were one to exist in the absence of a state breach of contract remedy, would provide plaintiff only the right to a hearing before deprivation of his property. Plaintiff's rights, either to a hearing or to damages for breach of

contract are not rights which will be harmed by abstention. See, e.g., Zwickler v. Koota, 389 U.S. 241, 251 (1967) (finding particular harm in abstention where plaintiff challenged a state statute on First Amendment grounds: "In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.").

The second factor in the *Pullman* analysis also weighs in favor of abstention. Whether there *are* available state contract remedies is the central question properly resolved by the state court; furthermore, the state court can also provide a hearing as a due process remedy.

Third, in the absence of state interpretation of the successor non-liability clause, the meaning of the law as applied to the contractual obligations of lapsed districts is unclear. See, e.g., Reetz v. Bozanich, 397 U.S. 82 (1970); Abraham v. Pekarski, 537 F. Supp. 858, 868 n.22 (E.D. Pa. 1982) ("Pullman abstention is most appropriate, although not required, in instances where the state law has never been interpreted."). The enactment of § 162.081.7 indicates a concern with the continuing obligations of a successor to a lapsed school district. The "any other purpose" component of the section might apply to other current and continuing obligations of the lapsed school district, or it might be fairly read to relieve the new district or board of any liability for obligations of the lapsed district, including obligations to pay for completed work. The statute clearly affects the Missouri courts' prior

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

interpretations of the topic of municipal successor liability, and reasonably read, could conflict with the contract and due process clauses of the Missouri constitution.

Finally, a decision that plaintiff has a contract remedy will avoid both a constitutional question by this Court and will avoid federal court adjudication of state educational matters, which are particularly appropriate for state court adjudication. Abstention here is not the equivalent of "giv[ing] state courts the first opportunity to vindicate the federal claim." <u>Zwickler v. Koota</u>, 389 U.S. 241, 251 (1967). The plaintiff's rights can be vindicated either by a purely state remedy (contract) or a federal remedy that exists only in the absence of that state remedy. The statute is "fairly subject to an interpretation which will avoid or modify the federal constitutional question," <u>id.</u>, and so it is appropriate for this Court to abstain from adjudication of the plaintiff's due process claim.

**Liberty Interest**

Plaintiff asserts that his contract conferred a liberty, as well as a property, interest. He requests a declaration that defendants infringed upon this liberty interest and he seeks a name clearing hearing to rectify the alleged damage to his professional reputation.

"A public employee is deprived of his liberty interest in connection with a discharge only when it occurs under circumstances which impose upon the employee a stigma or other disability foreclosing his freedom to take advantage of other employment

opportunities." <u>Green v. St. Louis Housing Authority</u>, 911 F.2d 65, 69 (8th Cir. 1990), <u>citing</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 573 (1972). "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." <u>Winegar v. Des Moines Ind. Community Sch. Dist.</u>, 10 F.3d 895, 899 (8th Cir. 1994). "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like." <u>Id.</u>

In 2005, the Wellston school district needed to achieve a certain level of proficiency in its Missouri Assessment Program ("MAP") scores in order to gain accreditation. Initially, it appeared that the Wellston High School's MAP scores met the required levels. However, in May of 2005, the Missouri Department of Elementary and Secondary Education disallowed the high school's MAP scores, allegedly citing the fact that the scores had improved by too much over the past year for the scores to be legitimate. The increased points were disallowed and, as a result, the district was not accredited.

Plaintiff claims that the defendants

represented to the public through the print and electronic media that: a) Cheating had occurred in the Wellston School District on its MAP tests, and particularly at the high school, which was the reason that students achieved higher test scores than in previous years. b) The District failed to receive even provisional accreditation under Plaintiff's leadership. . . .

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Compl. at ¶ 95. Furthermore, he claims that these public comments damaged his standing in the community and impaired his ability to gain other employment.

As a preliminary matter, only the first of the alleged representations can potentially form the basis of a liberty interest claim. Allegations about the plaintiff's job performance do not rise to an actionable level. "The charges leveled must injure the employee's good name, reputation, honor, or integrity. Falsely charging an employee with unsatisfactory job performance when terminating him does not infringe his liberty interest . . . ." Green, 911 F.2d at 69 (citations omitted).

The defendants argue that they are not the proper body from which to seek a name clearing hearing because they were not the plaintiff's employers. However, they were allegedly the source of the damaging statements. As "[t]he purpose of such notice and hearing is to provide the [employee] an opportunity to clear his name," Roth, 408 U.S. at 573 n.12, a hearing before the entity responsible for the damage to plaintiff's name would seem to be appropriate.

Defendants also claim that plaintiff's termination was simply the effect of the operation of the lapse statute. If this is the case, and the defendants' public statements reflect this reality, then plaintiff has suffered no deprivation of liberty. But, if it is as plaintiff alleges, and the defendants publicly linked his termination to administrative cheating, plaintiff's liberty

interests have been violated, whether defendants were technically plaintiff's employers or not.

Furthermore, plaintiff's allegations seem to point to some statements by the SAB as a way of explaining, to the public, their reasons for not rehiring plaintiff or adopting the remaining term of his contract. The explanation of plaintiff's removal and the retention or rehiring of other district employees by the SAB points to the existence of an affirmative decision process surrounding plaintiff's termination.

Defendants also argue that "plaintiff's broad and vague statement that defendants alleged cheating at the Wellston School District does not directly or necessarily refer to plaintiff." Mem. in Supp. of Mot. to Dismiss, at 15. Defendants argue that the statements alleged by plaintiff in his complaint are not specific enough to establish that plaintiff was implicated by the allegations of cheating on the high school MAP tests. Accusations of cheating on the MAP tests in order to achieve accreditation, if adequately connected to the plaintiff, would be sufficiently stigmatizing to implicate plaintiff's liberty interests, and a precise recital of what was said by the defendants to implicate the plaintiff's liberty interests is not necessary for his claim to survive a motion to dismiss.

**Federal Bankruptcy Code Preemption**

Plaintiff advances the novel argument that the state statute, in foreclosing liability for the successors of lapsed school districts, has dismissed the debts of the lapsed school district --

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

a result preempted by the Federal Bankruptcy Code. Defendants argue that the Federal Bankruptcy Code looks to state law to determine successor liability, and the statute at issue clearly limits the liability of the successor district. Moreover, they argue that the Bankruptcy Code simply does not apply because the Wellston school district, the putative debtor, has not applied for bankruptcy protection.

Plaintiff's complaint states that the "federal bankruptcy law is a pervasive scheme of federal regulation that involves a federal interest so dominant as to preclude the enforcement of state laws that purport to discharge the debts of debtors." Compl. at ¶ 58. Plaintiff hangs this argument on a delicate thread, namely, a sentence in International Shoe, Inc. v. Pinkus, 278 U.S. 261 (1929): "A state is without power to make or enforce any law governing bankruptcies that impairs the obligation of contracts or extends to persons or property outside its jurisdiction or conflicts with the national bankruptcy laws." Id. at 264. Plaintiff argues that "[b]ecause §162.081.7 R.S.Mo. provides for the discharge of debts, it is preempted by the Bankruptcy Code and null and void."

Plaintiff contends that he is a creditor, because he is owed compensation which the lapsed district has been rendered unable to pay. In addition to the fact that plaintiff has yet to reduce any amounts owed to judgments, bankruptcy is only suitable as a creditor's remedy when a creditor can force a debtor to involuntarily file for bankruptcy. This option is not available

with regard to municipalities, pursuant to 11 U.S.C.A. §303(a), because forcing a municipality into bankruptcy would infringe on state sovereignty rights. The Bankruptcy Code affords plaintiff no relief. And, since plaintiff's situation is unaffected by remedies in bankruptcy, the state law at issue neither impedes or facilitates relief for plaintiff because it simply does not apply.

Plaintiff has pointed only to a similarity in the effect of the Bankruptcy Code and R.S.Mo. §162.081.7, not a conflict.

> The federal Constitution, article I, section 8 gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, *state laws are thus suspended only to the extent of actual conflict* with the system provided by the Bankruptcy Act of Congress.

Stellwagen v. Clum, 245 U.S. 605, 613 (1918) (emphasis added).

Plaintiff argues that the effect of § 162.081.7 "frustrates the full effectiveness of federal law by discharging an insolvent municipality of its debts." If the Wellston school district (a municipality as defined by the Bankruptcy Code) were to voluntarily file for bankruptcy, a discharge of its debt is precisely what it would be seeking. Voluntary filing under the Bankruptcy Code and the operation of the statute precluding successor liability would have the same effect. Without a conflict between the operation of the bankruptcy laws and Missouri law, there is no preemption, and plaintiff's claim fails.

**Takings Clause**

The Fifth and the Fourteenth Amendments to the United States Constitution prohibit states or their subdivisions from taking private property without just compensation. Plaintiff claims that his "contract with the District constitutes a vested property right" and that it "was taken by the Defendants under the authority of §162.081.7. R.S. Mo." Compl. at ¶¶ 74-75. "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States." Lynch v. U.S., 292 U.S. 571, 579 (1934). Again, it is necessary to distinguish between the remainder of plaintiff's contact and his right to compensation for time already worked. Plaintiff does not have a property interest in continued employment with the district, as discussed above, but he does have an interest in contractually-guaranteed compensation for past work.

He also has a breach of contract claim against the elected school board. Plaintiff had a contract with the previous board and has not been paid according to the terms of the contract. In Castle v. U.S., 301 F.3d 1328, 1342 (Fed. Cir. 2002), the circuit court approved a lower court's determination that "despite breaching the contract, the government did not take the plaintiffs' property because they retained 'the range of remedies associated with the vindication of a contract.'" As with his due process claim, plaintiff's takings claim depends on whether the state has completely destroyed his remedies for breach of contract. Thus, abstention is warranted on this issue for the same reasons discussed relating to plaintiff's due process claim.

– 36 –

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

### Substantive Due Process Claim

Plaintiff alleges that the defendants violated his substantive due process rights by terminating his contract, ordering him to vacate his office "while members of the Missouri State Highway Patrol were in the building to provide security," and by not apprising him of his status with the district. He claims that this conduct was "so outrageous that it shocks the conscience, was arbitrary and capricious, offended judicial notions of fairness and was otherwise offensive to human dignity. . . ." Compl. at ¶ 85.

"To determine whether a violation of an individual's substantive due process rights has occurred, the question is whether the officials acted in an arbitrary or capricious manner, or so as to shock the conscience." Herts v. Smith, 345 F.3d 581, 587 (8th Cir. 2003). "The constitutional right to substantive due process includes a right to be 'free from discharge for reasons that are arbitrary and capricious, or in other words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a basis in fact.'" Id. [quoting North Dakota State University v. U.S., 255 F.3d 599, 605 (8th Cir. 2001)]. Here, although the parties disagree as to exactly how the plaintiff's employment with the district was terminated, there is no dispute that it was connected to the district's failure to gain accreditation and the subsequent determination of lapse by the state board of education. Plaintiff admits that his termination (or, at the very least, the ouster of the elected school board) was primarily due to the operation of the lapse statute; he disputes

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the defendants' role in his termination and argues that they acted to end his contract, whereas they maintain that the statute alone effected his termination. Under either interpretation, however, there is no indication that plaintiff's discharge was arbitrary and capricious or unrelated to the education process. Plaintiff may dispute the constitutionality of § 162.081, but the alleged breach of contract resulting from defendants' interpretation of the statute cannot constitute a denial of substantive due process.

"[A] substantive due process plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty . . . ." <u>Slusarchuk v. Hoff</u>, 346 F.3d 1178, 1181-82 (8th Cir. 2003) (emphasis in original) (internal citations and quotations omitted). Freedom from breach of contract is not a fundamental right. Simply put, the defendants' behavior in this instance does not "shock the conscience."

**State Law Claims**

As stated in the discussion of abstention, plaintiff's complaint includes a state breach of contract claim. He also brings a separate claim under the Missouri constitution, for "unlawful taking of both Plaintiff's right to contract and to [sic] the benefit of his contract without due process of law. . . ." Compl. at ¶108. He states that the "Defendants' actions taken under color of state law in depriving Plaintiff of his liberty and property right to contract with the District and to have such

- 38 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

contract enforced deprives Plaintiff of his right to due process of law. . . ." Id. at ¶ 105. Although the issue has not been separately briefed by the parties, it would seem that plaintiff's state due process claim also depends on the existence of a state contract remedy. In light of the Court's decision to abstain from adjudication of plaintiff's case until a state interpretation of the statute is rendered, it is appropriate to also leave the determination of the state due process claim to the state court.

**Qualified Immunity**

Plaintiff sues special administrative board members Brown, Beals, and Hollins-Wallace in their official as well as individual capacities. When sued in their individual capacities under 42 U.S.C. § 1983, officers of public entities are entitled to qualified immunity, and are only liable for clear violations of a plaintiff's established constitutional rights. See Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a defendant is entitled to qualified immunity, courts conduct a two part inquiry:

> (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted.

Henderson v. Munn, 439 F.3d 497, 501-02 (8th Cir. 2006).

As this memorandum demonstrates, plaintiff presents essentially two viable claims: one for breach of contract, and one for violation of a liberty interest. If the state court decides

– 39 –

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that plaintiff does not have a breach of contract remedy, plaintiff can then raise federal claims of denial of due process and taking of property without just compensation. As these claims are contingent on a future decision, defendants' actions have clearly not violated any established constitutional right.

Plaintiff can state a claim against the individual defendants for a violation of his liberty interest in connection with statements made during his termination. But "[q]ualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation." Whisman Through Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997). Here, the matter arises in a motion to dismiss, before discovery has taken place. The facts alleged by the plaintiff must be assumed to be true, and qualified immunity will only be found if plaintiff's complaint cannot state a claim for violation of his constitutional rights. At this time, the few facts alleged state a claim, but do not clearly establish the actions taken by the defendants and whether those actions were objectively reasonable. "We take a broad view of what constitutes 'clearly established' under the qualified immunity analysis. The balance favors the plaintiffs when the test is based solely on the allegations in the complaint." Id. at 1309 (internal citation omitted). Therefore, the defendants' motion to dismiss on the basis of qualified immunity will be denied.

**Conclusion**

Plaintiff raises multiple claims arising from the termination of his contractual relationship with the Wellston school district. His claims, both under 42 U.S.C. § 1983 and for declaratory relief, pursuant to the Contract Clauses of the United States and Missouri constitutions must fail. Nor can plaintiff state a claim that the Missouri statute has been preempted by the Federal Bankruptcy Code. The Court will abstain from adjudication of plaintiff's due process and takings claims, as these are both dependent on state interpretations of novel law. Plaintiff's state law claims, for breach of contract and for due process under the Missouri constitution, represent the issues to be decided before the Court can address his federal claims. In the state court, plaintiff may either raise his federal constitutional claims or reserve his right to return to federal court. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964).

Plaintiff has stated a claim for violation of his liberty interests. This claim is independent of the state law issues heretofore identified as requiring resolution by the state courts, because plaintiff's liberty interests are independent of his property interests in employment. See Colaizzi v. Walker, 542 F.2d 969, 973 (7th Cir. 1976)("[T]his combination of stigma plus failure to rehire/discharge states a claim even if the failure to rehire or discharge of itself deprives the plaintiff of no property interest within the meaning of the Fourteenth Amendment."). There is no other impediment to this Court's jurisdiction relating to this

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

single issue. Therefore, the Court will deny the defendants' motion to dismiss plaintiff's Count V - Request for Name Clearing Hearing.

Accordingly,

**IT IS HEREBY ORDERED** that motion of defendants Wellston School District, Charles Brown, Garry Beals, and Cassandra Hollins-Wallace to dismiss the complaint is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED** that the Court will abstain from proceeding on plaintiff's state-law dependent federal claims and those claims are **dismissed without prejudice** in accordance with this memorandum.

**IT IS FURTHER ORDERED** that defendants Wellston School District, Charles Brown, Garry Beals, and Cassandra Hollins-Wallace shall file an answer to Count V (Request for a Name Clearing Hearing) of plaintiff's complaint not later than **October 2, 2006.**


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 18th day of September, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com